IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYSHEIM MURPHY,<br><br>           Petitioner,<br><br>    v.<br><br>THE ATTORNEY GENERAL OF<br>THE STATE OF NEW JERSEY,<br>et al.,<br><br>           Respondents. | Civil Action<br>No. 17-2960 (NLH)<br><br>**OPINION** |

APPEARANCES:

Tysheim Murphy
668462/719455C
East Jersey State Prison
1100 Woodbridge Rd.
Rahway, NJ 07065

    Petitioner pro se

John J. Santoliquido, Esq.
Atlantic County Prosecutor's Office
4997 Unami Boulevard
Mays Landing, New Jersey 08330
    Attorney for Respondent John Cunningham

HILLMAN, District Judge

## I. INTRODUCTION

Tysheim Murphy, a state prisoner confined at East Jersey State Prison, is proceeding on a second amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 7. As part of that petition, he seeks an evidentiary hearing on one

of his claims of ineffective assistance of counsel. ECF No. 36. For the reasons stated herein, the Court will deny the motion for an evidentiary hearing.

## II. BACKGROUND

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, 28 U.S.C. § 2254(e)(1), reproduces the recitation of the facts as set forth by the Honorable Bernard DeLury, Jr., J.S.C., in his opinion denying Petitioner's first post-conviction relief ("PCR") petition:

> On February 3, 2007, the victim, Nyjua Kemp, while driving home to Bridgeton, NJ after a night at the casinos in Atlantic City, received a "chirp" from an acquaintance, "Amy,"[1] whom he met inadvertently on a single occasion at a convenience store near their home. Ms. Curran stated that she was also in Atlantic City and requested a ride. After a bit of confusion as to her location, the victim eventually met her outside of the Tropicana Casino where she was accompanied by two other women. When the victim arrived, he picked up Ms. Curran only and she provided him with directions to her sister's apartment. During their drive, Ms. Curran made a phone call and said that she was on her way, along with the victim. After arriving at Ms. Curran's apartment, the victim accompanied her upstairs. Upon entering, the apartment appeared unlocked and empty with a bottle of liquor and some cigars on a table. Ms. Curran locked the door behind them and stated that her sister would be home soon. The victim felt uneasy and said that he intended not to stay but merely wanted to use the restroom before leaving. Ms. Curran then approached the bathroom door and two men emerged, the Petitioner and Mr. Raheem Hayes. The Petitioner brandished a gun and

---

[1] "Per the State, 'Amy' is Amy Curran." ECF No. 28-29 at 2 n.2. She is also referred to as "Amy Scott" in some portions of the record.

2

>ordered the victim to put his hands up while Mr. Hayes extracted the victim's money, car keys and cell phone. One of the men then slapped Ms. Curran and took her money as well.[2]  Mr. Hayes then tied a shoelace from the victim's boots around the victim's hands, binding his wrists.  The Petitioner then announced they were going for a ride.  Ms. Curran stayed behind in the apartment as the three men left.
>
>The two men forced the victim into his car, at gunpoint, while the Petitioner drove the vehicle.  A few minutes later, they ordered him to exit his vehicle.  The victim immediately complied.  The victim, then, remembering that they had passed a police officer during their short drive, found Officer Kien Nhan, and reported the incident.  As Officer Nhan and the victim were conversing with one another, the victim recognized one of the perpetrators from across the street.  The suspect was detained and later identified as the Petitioner.  During a pat-down of the Petitioner, two cell phones were recovered, one belonging to the victim.  The victim's phone was subsequently returned to him at the scene. The police soon thereafter apprehended the Petitioner's co-defendant, Mr. Hayes in a convenience store, where they also found the handgun described by the victim laying on a shelf.

ECF No. 28-29 at 2.

An Atlantic County Grand Jury indicted Petitioner for conspiracy to commit robbery, N.J.S.A. §§ 2C:5-2, 2C:15-1 (Count 1); first-degree robbery, N.J.S.A. § 2C:15-1 (Count 2); second-degree robbery, N.J.S.A. § 2C:15-1 (Count 3); third-degree unlawful possession of a handgun, N.J.S.A. § 2C:39-5b (Count 4); second-degree possession of a handgun for unlawful purposes, N.J.S.A. § 2C:39-4 (Count 5); fourth-degree aggravated assault,

---

[2] "The victim stated that the assault on Amy appeared to be staged."  ECF No. 28-29 at 2 n.3.

3

N.J.S.A. 2C:12-1b(4) (Count 6); third-degree terroristic threats, N.J.S.A. 2C:l2-3b (Count 7); second-degree conspiracy to commit carjacking, N.J.S.A. §§ 2C:5-2, 2C:15-2 (Count 8); first-degree carjacking, N.J.S.A. § 2C:15-2a(2) (Count 9); second-degree conspiracy to commit kidnapping, N.J.S.A. §§ 2C:5-2, 2C:l3-1 (Count 10); second-degree kidnapping, N.J.S.A. § 2C:13-1b (Count 11); and third-degree possession of a weapon by a convicted person, N.J.S.A. §  2C:39-7 (Count 13).[3]  ECF No. 28-3.  Petitioner moved to sever his trial from his co-defendant's, but the trial court denied the motion.  ECF No. 28-3. "[P]etitioner was convicted by a jury on Counts 1 through 7, and on Count 11 as amended to criminal restraint; the jury found petitioner not guilty on Counts 8, 9, and 10.  Petitioner submitted Count 13 to the judge, who found him guilty."  ECF No. 28 at 3.

On October 22, 2010, the trial court sentenced Petitioner to a total term of 38 years imprisonment.  ECF No. 28-4. Petitioner appealed, and the Appellate Division affirmed the convictions but remanded for resentencing.  State v. Murphy, No. A-4420-10, 2012 WL 1697392 (N.J. Super. Ct. App. Div. May 16, 2012).  The New Jersey Supreme Court denied certification on November 9, 2012.  State v. Murphy, 56 A.3d 394 (N.J. 2012).  On

---

[3] Count 12 was only issued against co-defendant Hayes.

remand, the trial court again sentenced Petitioner to 38 years. ECF No. 28-4. The Appellate Division affirmed the new sentence. ECF No. 28-22.

Petitioner filed a motion for post-conviction relief ("PCR") on December 20, 2012, which was supplemented by his appointed counsel on March 20, 2014. ECF No. 28-26. The PCR court held oral argument on May 13, 2014 and later denied the petition without an evidentiary hearing. ECF No. 28-29.[4] The Appellate Division affirmed, State v. Murphy, No. A-0807-14, 2016 WL 6872984 (N.J. Super. Ct. App. Div. Nov. 22, 2016) (per curiam), and the New Jersey Supreme Court denied certification, State v. Murphy, 166 A.3d 237 (N.J. 2017). Petitioner filed two more unsuccessful PCR motions but did not appeal either denial. ECF Nos. 28-39, 28-42.

**III. ANALYSIS**

In Ground Eight of the second amended petition, Petitioner alleges "[t]he defendant was denied the effective assistance of counsel when defense counsel misled the defendant with regards to the use of Amy Curran as a defense witness thereby depriving him of the right to making an informed decision about avoiding an extended term and accepting a comparatively lenient plea

---

[4] The State did not provide a transcript of the PCR Hearing.

agreement." This claim was rejected on the merits by the PCR court and by the Appellate Division.

A. <u>Standard of Review</u>

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" <u>Lafler v. Cooper</u>, 566 U.S. 156, 162 (2012) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970)). "A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied." <u>Hines v. Ricci</u>, No. 10-4130, 2013 WL 1285290, at *16 (D.N.J. Mar. 26, 2013) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984)). "[T]he standard for prevailing under the first prong of <u>Strickland</u> remains stringent: a petitioner must establish that, 'in light of all the circumstances,' counsel's mistake was so egregious that it fell 'outside the wide range of professionally competent assistance.'" <u>Branch v. Sweeney</u>, 758 F.3d 226, 234-35 (3d Cir. 2014) (quoting <u>Strickland</u>, 466 U.S. at 690).

In <u>Hill v. Lockhart</u>, the Supreme Court held that "the two-part <u>Strickland v. Washington</u> test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the <u>Strickland v. Washington</u> test is nothing more than a restatement of the

6

standard of attorney competence . . . ." 474 U.S. 52, 58 (1985). However, it tailored <u>Strickland</u>'s second prong, the "prejudice prong," to specifically address claims that a defendant received ineffective assistance of counsel during the plea process. The Court announced that the second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Id.</u> at 59. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Id.</u>

The Supreme Court subsequently further refined this standard in <u>Lafler v. Cooper</u>, 566 U.S. 156 (2012), in which defendant stated he rejected a plea offer based on the deficient advice of counsel. "[A]fter the plea offer had been rejected, there was a full and fair trial before a jury. After a guilty verdict, the defendant received a sentence harsher than that offered in the rejected plea bargain." <u>Id.</u> at 160. "In contrast to <u>Hill</u>, here the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged." <u>Id.</u> at 164. The Court continued:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have

7

>been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id.

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (internal citation omitted). With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A district court is required to hold an evidentiary hearing only when the petitioner presents a prima facie showing that 'a new hearing would have the potential to advance the petitioner's claim.'" Porter v. Adm'r of New Jersey State Prison, No. 20-2048, 2021 WL 2910944, at *4 (3d Cir. July 12, 2021) (quoting Siehl v. Grace, 561 F.3d 189, 197 (3d Cir.

8

2009)).  In other words, this Court must first determine whether the Appellate Division, as the last state court to reach the issue on its merits, issued a decision that was contrary to federal law, an unreasonable application of federal law, or was based on an unreasonable determination of the facts.  If no, the inquiry ends there because Petitioner has not satisfied the § 2254(d) standard.  If the Court so finds, it must then determine whether a hearing could allow Petitioner to prove his allegation that counsel intentionally mislead him as to whether Ms. Curran would be called as a witness at trial.[5]

B.  <u>Contrary to Established Supreme Court Precedent</u>

The Court relies on the opinion of the Appellate Division affirming the denial of Petitioner's first PCR petition as it is the last state court decision on the merits of Petitioner's claim.  A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and

---

[5] Section 2254 prohibits a federal court from conducting an evidentiary hearing "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings . . . ." 28 U.S.C. § 2254(e)(2).  The Court concludes this prohibition would not apply to Petitioner because Petitioner made a reasonable attempt to obtain an evidentiary hearing in the state courts.  <u>Williams v. Taylor</u>, 529 U.S. 420 (2000).

9

nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

The Court concludes the state court correctly identified the Strickland standard, as defined in Hill and Lafler, to Petitioner's claim:

> In a lengthy written opinion, Judge DeLury considered and rejected all of defendant's PCR arguments, concluded that defendant had not presented a prima facie case of ineffective assistance of counsel, and denied the petition without an evidentiary hearing. Citing State v. Fritz, 105 N.J. 42, 52 (1987),[6] Judge DeLury noted the great deference due to an attorney's trial strategy, and he found that trial counsel was not ineffective in deciding not to call Curran as a witness.
>
> Judge DeLury also found no evidence that trial counsel misled defendant about his intent to call Curran as a witness. Rather the record reflected that the issue "had been debated back and forth" and trial counsel finally decided as a strategic matter that Curran's testimony would be more harmful than helpful to the defense. Judge DeLury also considered the record of the plea negotiations, which clearly indicated that defendant was never willing to accept a plea deal involving more than a five-year sentence, which the State was not willing to offer.

State v. Murphy, No. A-0807-14, 2016 WL 6872984, at *2-3 (N.J. Super. Ct. App. Div. Nov. 22, 2016). The Appellate Division does not cite to Hill or Lafler by name, but it specifically noted that the PCR court found the record of the plea negotiations did not support Petitioner's assertion that he would have accepted the 7-year plea bargain. Id. at *3.

---

[6] Fritz is the New Jersey state equivalent of Strickland. See Fritz, 105 N.J. at 52 (setting forth Strickland standard).

10

> The PCR court wrote:
>
>> [T]he Petitioner argues, pro se, that he was willing to accept a guilty plea. The Petitioner in his PCR petition stated that he would have accepted a plea of seven years had one been offered to him. Trial Counsel sent a letter to Petitioner stating that the State would offer seven years but the Petitioner in a response letter, dated October 19, 2009, counteroffered that he would like to negotiate for five years at 85%. After the Petitioner's response letter, there is no further correspondence showing that a plea would have been accepted for seven years.

ECF No. 28-29 at 12-13. These statements by the state courts indicate they determined that there was no probability, never mind a reasonable probability, that Petitioner would have accepted a 7-year deal. See Shinn v. Kayer, 141 S. Ct. 517, 523 (2020) ("A reasonable probability means a 'substantial,' not just 'conceivable,' likelihood of a different result." (quoting Cullen v. Pinholster, 563 U.S. 170, 189 (2011)). This is the Hill and Lafler inquiry even if the cases are not cited by name.

This Court must give the state courts "the benefit of the doubt," Burt v. Titlow, 571 U.S. 12, 15 (2013), and "absent an affirmative indication to the contrary," state courts are presumed to know and follow the law. Bell v. Cone, 543 U.S. 447, 456 (2005) (per curiam) (citing Woodford v. Visciotti, 537 U.S. 19, 24 (2002). The Appellate Division's opinion "may perhaps be imprecise, but if so it can no more be considered a repudiation of the [Strickland prejudice] standard than can this Court's own occasional indulgence in the same imprecision."

11

Visciotti, 537 U.S. at 24. See also Sawyer v. Superintendent Muncy Sci, 619 F. App'x 163, 170 (3d Cir. 2015) ("Most relevant court of appeals decisions agree that where a reading of the state court's opinion as a whole demonstrates that the state court applied the correct legal standard (notwithstanding stray imprecise articulations), the federal habeas court is to defer to the state court's decision."), cert. denied sub nom. Sawyer v. Smith, 136 S. Ct. 1173 (2016); Pennington v. Hughes, No. 13-2692, 2016 WL 4992092, at *7 n.6 (D.N.J. Sept. 19, 2016).

It also cannot be said that Petitioner's claim is indistinguishable from Lafler. The defendant in Lafler rejected the plea "allegedly after his attorney convinced him that the prosecution would be unable to establish his intent to murder [the victim] because she had been shot below the waist." 566 U.S. at 161. In Petitioner's case, he alleges he rejected the plea offer because he believed Ms. Curran was going to testify on his behalf at trial. It is insufficient that both Lafler and Petitioner could be said to have rejected a plea because they both thought they would win at trial. What distinguishes the two cases is that Lafler proceeded to trial because his counsel told him that his actions were legally insufficient to meet the elements of murder even if the state's theory of the crime were accurate, whereas Petitioner asserts he proceeded to trial

12

because he thought Ms. Curran would contradict the state's version of events.

The Appellate Division correctly identified the relevant standard under Strickland, Hill, and Lafler. Petitioner's case is distinguishable from Lafler. Therefore, the Appellate Division's opinion was not contrary to established Supreme Court precedent. The Court must next consider whether it was an unreasonable application of clearly established federal law.

C.  Unreasonable Application

"[A] state-court decision is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). "[A]n unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." Id. at 419 (internal quotation marks omitted). "The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." Id. at 427 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)); see also Rosen v. Superintendent Mahanoy SCI, 972 F.3d 245, 252 (3d Cir. 2020). "Congress 'meant' this standard to be

13

'difficult to meet.'" Shinn v. Kayer, 141 S. Ct. 517, 523 (2020) (per curiam) (quoting Harrington, 562 U.S. at 102).

Having carefully reviewed the state court record, the Court cannot say the Appellate Division was objectively unreasonable in applying Supreme Court precedent to Petitioner's claim. Prior to opening statements, trial counsel put on the record his reasons for not calling Ms. Curran as a witness:

> Ms. Amy Curran . . . in this case not been brought as a witness. This had been discussed numerous times previously. It's gone back and forth, the reports we have gotten from her, lean essentially both ways. Some of the things she says are duplicitous, some aid the State; as a tactical decision of defense as an essential element of this case that they prove a tie between those individuals. And I have a report which I believe is the only report — the State didn't interview her, the State didn't investigate her — that [leans] both ways and the way the case has gone and the way it is being prepared particularly with the objections regarding the evidence coming regarding the incident in Ventnor as well as the more than three years difference in that event, that the addition of Ms. Curran to this case in fact would be more detrimental to the defense. And in that case the State bears the burden of proof, we do not. We do not have to present evidence of witnesses that are going to place my client in a position with anyone particularly the victim which would quite frankly come out immediately with her testimony. That being said, and particularly the way the rest of evidence has sized its way up at this point the way your Honor has excluded, what I am attempting to exclude, and the way we are presenting this case, that's essentially the way this is going to be resolved.

ECF No. 28-11 at 7-8. The trial court accepted this explanation of counsel's strategic decision, as did the PCR court and

14

Appellate Division.  See ECF No. 28-29 at 11; Murphy, No. A-0807-14, 2016 WL 6872984, at *3.

An investigator employed by the Office of the Public Defender interviewed Ms. Curran on August 14, 2007.  ECF No. 20-2 at 52.  She admitted that she knew Mr. Kemp prior to the incident and was "together" with Petitioner on the date in question.  Id.  She stated she invited Mr. Kemp to her and Petitioner's residence for a drink.  Id. at 53.  Ms. Curran "indicated that suddenly she heard the toilet flush and realized that the defendant was in the bathroom.  [Ms. Curran] stated that the defendant stepped out of the bathroom and immediately confronted Ms. Curran about having another man in their room."  Id.  Had she testified to this effect, Ms. Curran would have confirmed certain aspects of Mr. Kemp's testimony, including that Ms. Curran invited Mr. Kemp to her place despite being in a relationship with Petitioner and there was a confrontation with Petitioner at the room.

The PCR court determined, and the Appellate Division agreed, that trial counsel made a strategic decision in choosing not to call Ms. Curran as a witness: "[w]hile it may be true that the statement to be elicited by Ms. Curran would contradict the State's case, it also would be detrimental to the defense.  The defense's trial strategy was to not have a link between the Petitioner and the commission of the crime."  ECF No. 28-29 at

15

Case 1:17-cv-02960-NLH   Document 37   Filed 07/26/21   Page 16 of 20 PageID: 2605

11. "It is the job of trial counsel to act fervently on behalf of his client. To produce a witness that is going to connect the client with the crime that he is accused of would not further defense counsel's goal." Id. at 12. Petitioner argues that trial counsel's explanation before the trial court was a "belatedly self-serving statement" and a "complete fabrication," ECF No. 36 at 4, but facts in the record would support the state courts' interpretation. As such, the Court cannot say the state courts made objectively unreasonable determinations.

There are also facts in the record to support the Appellate Division's determination that Petitioner did not meet the prejudice prong of Strickland. Trial counsel wrote to Petitioner on October 8, 2009 indicating that he was attempting to have Ms. Curran brought into court. ECF No. 20-2 at 83. He also noted that "It is my understanding that the offers in this case are 7 for each of you however I do certainly believe that we would have no difficulty in getting your offer down to 6 years 85% if you would be so inclined." Id. at 84. Petitioner responded on October 13, 2009 that he "would like to consider the offer of 5 year with 85%." Id. at 44.[7] As the PCR Court

---

[7] The state courts noted that there was never a formal offer for anything less than 7 years. See Murphy, No. A-0807-14, 2016 WL 6872984, at *3; ECF No. 28-29 at 13.

16

noted, Petitioner had previously rejected the 7-year plea on the record:

> COURT: Mr. Murphy, you know what you're charged with in this case?
>
> PETITIONER: Yes
>
> COURT: And you had some discussions with ... uhh ... the prosecutor and your lawyer, on the record back several months ago about trying to work out a ... a... plea agreement in this case?
>
> PETITIONER: Yes
>
> COURT: And you were not willing to do that?
>
> PETITIONER: Yes
>
> COURT: You wanted to go to trial? Is that right?
>
> TRIAL COUNSEL: Judge, he's willing to take a plea but it's not the plea that's offered.
>
> COURT: Ok, well, do you know what the plea is that he's offered, the prosecutor?
>
> TRIAL COUNSEL [to the State]: Still 7?
>
> PROSECUTOR: Yes.
>
> COURT: Alright, that hasn't changed? That's the same plea offer?
>
> STATE: Yes Judge, that has not changed. He's already accepted the 85%.
>
> COURT: Alright. Mr. Murphy, you're not willing to accept that? You would rather go to trial? Is that correct?
>
> PETITIONER: Yes. I ain't willing to accept that, no.
>
> COURT: What did he say?

17

>     TRIAL COUNSEL: I am not willing to accept that, no, thank you.

ECF No. 28-29 at 13 (quoting Pre-Trial Conference Transcript, May 12, 2009). From these facts, it was reasonable for the state courts to conclude that there was not a reasonable possibility that Petitioner would have accepted a 7-year plea offer.

In § 2254 proceedings, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington v. Richter, 562 U.S. 86, 101 (2011). "When a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (quoting Harrington, 562 U.S. at 103). See also Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (per curiam) ("All that mattered was whether the [state] court, notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." (second alteration in original) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123

18

(2009))).  Under the "double deference" owed to the Appellate Division, the Court concludes that the state courts reasonably applied Strickland to the facts of Petitioner's case.

The Appellate Division issued a ruling on the merits of Petitioner's Ground Eight claim.  The Court finds that that decision is not contrary to established Supreme Court precedent, nor an unreasonable application of that precedent.  It is further reasonable in light of the facts contained in the state court record.  Therefore, Petitioner has not met his burden of proof under § 2254(d)(1).  "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'"  Cullen v. Pinholster, 563 U.S. 170, 183 (2011) (quoting Schriro v. Landrigan, 550 U.S. 465, 474 (2007)).  The Court will not hold an evidentiary hearing on this claim.

D. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."  The Court will reserve its decision on a certificate of appealability pending its review of Petitioner's other claims.

19

**IV. CONCLUSION**

For the reasons stated above, the Court will deny Petitioner's motion for an evidentiary hearing of Ground Eight. The decision on a certificate of appealability shall be reserved.

An accompanying Order will be entered.

| | |
|---|---|
| _July 26, 2021_ | _s/ Noel L. Hillman_ |
| Date | NOEL L. HILLMAN |
| | U.S. District Judge |