UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TYSHEIM MURPHY,

                    Petitioner,

        v.

THE ATTORNEY GENERAL OF
THE STATE OF NEW JERSEY,
et al.,

                    Respondents.

Civil Action
No. 17-2960 (NLH)


OPINION


APPEARANCES:

Tysheim Murphy
668462/719455C
East Jersey State Prison
1100 Woodbridge Rd.
Rahway, NJ 07065

        *Petitioner pro se*

William Reynolds, Atlantic County Prosecutor
John J. Santoliquido, Esq.
Atlantic County Prosecutor's Office
4997 Unami Boulevard
Mays Landing, New Jersey 08330

        *Attorney for Respondents*


HILLMAN, District Judge

I.    INTRODUCTION

        Tysheim Murphy, a state prisoner confined at East Jersey

State Prison, is proceeding on a second amended petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 7.

Respondents oppose the petition.  ECF No. 28.  For the reasons

stated below, the petition will be denied.  No certificate of appealability shall issue.

II.  BACKGROUND

The facts of this case were recounted below in state court and this Court, affording the state court's factual determinations the appropriate deference, 28 U.S.C. § 2254(e)(1), reproduces the recitation of the facts as set forth by the Honorable Bernard DeLury, Jr., J.S.C., in his opinion denying Petitioner's first post-conviction relief ("PCR") petition:

> On February 3, 2007, the victim, Nyjua Kemp, while driving home to Bridgeton, NJ after a night at the casinos in Atlantic City, received a "chirp" from an acquaintance, "Amy,"[1] whom he met inadvertently on a single occasion at a convenience store near their home. Ms. Curran stated that she was also in Atlantic City and requested a ride.  After a bit of confusion as to her location, the victim eventually met her outside of the Tropicana Casino where she was accompanied by two other women.  When the victim arrived, he picked up Ms. Curran only and she provided him with directions to her sister's apartment.  During their drive, Ms. Curran made a phone call and said that she was on her way, along with the victim.  After arriving at Ms. Curran's apartment, the victim accompanied her upstairs.  Upon entering, the apartment appeared unlocked and empty with a bottle of liquor and some cigars on a table.  Ms. Curran locked the door behind them and stated that her sister would be home soon.  The victim felt uneasy and said that he intended not to stay but merely wanted to use the restroom before leaving.  Ms. Curran then approached the bathroom door and two men emerged, the Petitioner and Mr. Raheem Hayes.  The Petitioner brandished a gun and

---

[1] "Per the State, 'Amy' is Amy Curran."  ECF No. 28-29 at 2 n.2. "She was identified as Amy Curran in this matter, but she previously was known as Amy Scott."  ECF No. 28 at 5 n.2.

ordered the victim to put his hands up while Mr. Hayes extracted the victim's money, car keys and cell phone. One of the men then slapped Ms. Curran and took her money as well.[2]  Mr. Hayes then tied a shoelace from the victim's boots around the victim's hands, binding his wrists.  The Petitioner then announced they were going for a ride.  Ms. Curran stayed behind in the apartment as the three men left.

The two men forced the victim into his car, at gunpoint, while the Petitioner drove the vehicle.  A few minutes later, they ordered him to exit his vehicle.  The victim immediately complied.  The victim, then, remembering that they had passed a police officer during their short drive, found Officer Kien Nhan, and reported the incident. As Officer Nhan and the victim were conversing with one another, the victim recognized one of the perpetrators from across the street.  The suspect was detained and later identified as the Petitioner.  During a pat-down of the Petitioner, two cell phones were recovered, one belonging to the victim.  The victim's phone was subsequently returned to him at the scene. The police soon thereafter apprehended the Petitioner's co-defendant, Mr. Hayes in a convenience store, where they also found the handgun described by the victim laying on a shelf.

ECF No. 28-29 at 2.

An Atlantic County Grand Jury indicted Petitioner for conspiracy to commit robbery, N.J.S.A. §§ 2C:5-2 and 2C:15-1 (Count 1); first-degree robbery, N.J.S.A. § 2C:15-1 (Count 2); second-degree robbery, N.J.S.A. § 2C:15-1 (Count 3); unlawful possession of a handgun, N.J.S.A. 2C:39-5b (Count 4); possession of a handgun for unlawful purposes, N.J.S.A. 2C:39-4 (Count 5); aggravated assault, N.J.S.A. 2C:12-1b(4) (Count 6); terroristic

---

[2] "The victim stated that the assault on Amy appeared to be staged."  ECF No. 28-29 at 2 n.3.

threats, N.J.S.A. 2C:l2-3b (Count 7); conspiracy to commit
carjacking, N.J.S.A. 2C:5-2 and 2C:15-2 (Count 8); carjacking,
N.J.S.A. 2C:15-2a(2) (Count 9); conspiracy to commit kidnapping,
N.J.S.A. 2C:5-2 and 2C:l3-1 (Count 10); kidnapping, N.J.S.A.
2C:13-1b (Count 11); and possession of a weapon by a convicted
person, N.J.S.A. 2C:39-7 (Count 13).  ECF No. 28-3.[3]

Petitioner moved to sever his trial from his co-
defendant's, but the trial court denied the motion.  ECF No. 28-
3.  "[P]etitioner was convicted by a jury on Counts 1 through 7,
and on Count 11 as amended to criminal restraint; the jury found
petitioner not guilty on Counts 8, 9, and 10.  Petitioner
submitted Count 13 to the judge, who found him guilty."  ECF No.
28 at 3.

On October 22, 2010, the trial court sentenced Petitioner
to a total term of 38 years imprisonment.  ECF No. 28-4.
Petitioner appealed, and the Appellate Division affirmed the
convictions but remanded for resentencing.  State v. Murphy, No.
A-4420-10, 2012 WL 1697392 (N.J. Super. Ct. App. Div. May 16,
2012).  The New Jersey Supreme Court denied certification on
November 9, 2012.  State v. Murphy, 56 A.3d 394 (N.J. 2012).
The trial court again sentenced Petitioner to 38 years on

---

[3] Count 12 was only issued against co-defendant Hayes.

remand.  ECF No. 28-4.  The Appellate Division affirmed the new sentence.  ECF No. 28-26.

Petitioner filed a PCR petition on December 20, 2012, which was supplemented by a March 20, 2014 brief filed by his appointed counsel.  ECF No. 28-26.  The PCR court held oral argument on May 13, 2014 and denied the petition without an evidentiary hearing.  ECF No. 28-29.  The Appellate Division affirmed, State v. Murphy, No. A-0807-14, 2016 WL 6872984 (N.J. Super. Ct. App. Div. Nov. 22, 2016) (per curiam), and the New Jersey Supreme Court denied certification, State v. Murphy, 166 A.3d 237 (N.J. 2017).  Petitioner filed two more unsuccessful PCR motions but did not appeal either denial.  ECF Nos. 28-39, 28-42.

Petitioner filed his original § 2254 petition on April 28, 2017.  ECF No. 1.  The Court administratively terminated the petition as it was not on the correct form for habeas petitions and Petitioner had not paid the filing fee.  ECF No. 3. Petitioner paid the filing fee and submitted the second amended petition on July 12, 2017.[4]  ECF No. 7.  He also filed a motion to stay the habeas proceedings while he exhausted his state court remedies on his claim that his PCR counsel was

---

[4] An amended petition had been received by the Clerk's Office and was inadvertently docketed under a new civil case number.  See ECF Nos. 5, 6.

ineffective.  ECF No. 8.  The Court reopened the matter and directed Respondents to file a response to the motion to stay only.  ECF No. 10.  The motion to stay was denied on March 16, 2018.  ECF No. 16.

On April 4, 2018, Petitioner filed a letter, docketed as a Motion to Amend, asking for an extension of time to file a "more comprehensive brief to better articulate all my issues . . . ." ECF No. 17 at 1.  He subsequently filed a brief and exhibits on June 19, 2018.  ECF No. 20.  The Court denied the Motion to Amend.  ECF No. 22.

On May 20, 2019, Petitioner filed a motion for an evidentiary hearing on two issues: (1) whether trial counsel was ineffective for failure to call or secure the presence of a witness at trial; and (2) whether trial counsel mislead Petitioner into believing the witness would be testifying at trial, thereby inducing Petitioner to reject the plea offer. ECF No. 24 at 5-6.  The Court denied the motion as premature since Respondents had not yet been instructed to file a response.  ECF No. 27.

The Court conducted its review under Habeas Rule 4 and instructed Respondents to answer Grounds One through Eight and Eighteen through Twenty-three of the second amended petition. Id.  Respondents filed their answer on January 21, 2020, ECF No. 28, and Petitioner submitted his traverse on March 16, 2020, ECF

6

No. 29.  The Court denied Petitioner's renewed request for an evidentiary hearing on July 26, 2021.  ECF No. 38.

III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas corpus on behalf of a person in state custody, pursuant to the judgment of a state court, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405–06 (2000).

"[A] state-court decision is an unreasonable application of clearly established [Supreme Court] precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706, reh'g denied, 134 S. Ct. 2835 (2014).  The Court must presume that the state court's factual findings are correct unless Petitioner has rebutted the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

IV. ANALYSIS

Petitioner's second amended petition raised twenty-four points for the Court's review.  ECF No. 7.  The Court summarily dismissed Grounds Nine through Seventeen as well as Ground Twenty-four[5] because they raised claims that are not cognizable in federal habeas.  ECF No. 27.  The remaining claims for relief are:

> I.   The trial court misapplied its discretion in denying defendant's motion for severance or mistrial made after the opening statement by counsel for co-defendant Hayes.
>
> II.  The defendant's conviction should be reversed because the trial court failed to apply appropriate N.J.R.E. 404(b) criteria on admitting evidence of a prior association between the defendant and Amy.

---

[5] In dismissing Ground Sixteen, which argued "Petitioner's petition for post-conviction relief is timely filed under R. 3:22-12(2)," the Court expressed no opinion on whether any of the petitions were timely filed or procedurally defaulted.  ECF No. 26 at 7 & n.2.

III. The defendant's right to a fair trial was prejudiced by the prosecutor's over-zealousness in summation.

IV. The Motion court erred in not dismissing the indictment because the prosecutor's inadequate investigation and manner of presentation resulted in the submission of "Half Truths" to the grand jury and undermined the defendant's State constitutional right to indictment by Grand Jury.

V. The trial court applied an erroneous standard in denying the defendant's motion for a new trial.

VI. Imposition of the extended term base sentence of 38 years imprisonment on the defendant's conviction for First-degree robbery on count two was manifestly excessive and represented a misapplication of the court's discretion.

VII. Post-conviction relief is a defendant's last opportunity to raise a constitutional challenge to the fairness and reliability of a criminal verdict in our State (Ineffective Assistance of Counsel)

VIII. The defendant was denied the effective assistance of counsel when defense counsel misled the defendant with regards to the use of Amy Curran as a defense witness thereby depriving him of the right to making an informed decision about avoiding an extended term and accepting a comparatively lenient plea agreement.

XVIII. Counsel was ineffective in failing to file a motion to dismiss count thirteen of the indictment as no evidence was presented at the grand jury to support it in violation of the Fifth and Fourteenth Amendments of the United States Constitution and New Jersey Constitution (1947). Art. I, par. 8.

XIX. Defendant was denied his right of confrontation, cross examination, and the right to present a complete defense in violation of the Sixth and Fourteenth Amendment to the United States Constitution.

XX.   Trial Counsel failed to raise the issue of selective prosecution in violation of the Sixth and Fourteenth Amendments of the United States Constitution.

XXI.  Defendant received ineffective assistance of counsel when counsel failed to move for a mistrial after defendant's right to remain silent was violated by the jury learning he was in jail in violation of the Fifth Sixth and Fourteenth Amendment of the United States Constitution.

XXII. The defendant was convicted on the State's use of perjured testimony in violation of the Sixth and Fourteenth Amendment to the United States Constitution.

XXIII. Petitioner was denied the effective assistance of Appellate Counsel in violation of the Sixth and Fourteenth Amendment to the United States Constitution.

ECF No. 7 at 20-51.

A.   <u>Failing to Grant a Severance</u>

In the first ground of the second amended petition, Petitioner argues that his right to a fair trial was violated when the trial court failed to sever his trial from that of his co-defendant. He states his "right to a fair trial was unduly prejudiced the danger of 'Guilt By Association' that was aggravated by [co-defendant's counsel's] opening statement." ECF No. 7 at 20.

[I]n the opening statement of counsel for co-defendant Hayes counsel stated "it's hard to come up with a good opening statement when your client is guilty. That's right, my client Raheem Hayes is guilty. He's guilty to certain offenses which the prosecutor mentioned, not all the offenses." Co-defendant's counsel continued, "Mr. Hayes, as you heard, was found with a gun, and we don't

> dispute that.  Mr. Hayes is what you would call a small
> time drug dealer, and that's a dangerous trade."

Id.; see also ECF No. 28-11 at 25.  As this claim was
adjudicated on the merits by the New Jersey state courts during
Petitioner's direct appeal, Petitioner may only obtain habeas
relief "if the state court decision was (1) 'contrary to, or
involved an unreasonable application of, clearly established
Federal law,' or (2) 'was based on an unreasonable determination
of the facts in light of the evidence presented in the State
court proceeding.'"  Grant v. Lockett, 709 F.3d 224, 231 (3d
Cir. 2013) (quoting 28 U.S.C. § 2254(d)).

"[T]he Court has long recognized that joint trials
'conserve state funds, diminish inconvenience to witnesses and
public authorities, and avoid delays in bringing those accused
of crime to trial.'"  United States v. Lane, 474 U.S. 438, 449
(1986) (quoting Bruton v. United States, 391 U.S. 123, 134
(1968)).  Under federal law, a court should sever trials of co-
defendants "only if there is a serious risk that a joint trial
would compromise a specific trial right of one of the
defendants, or prevent the jury from making a reliable judgment
about guilt or innocence."  Zafiro v. United States, 506 U.S.
534, 539 (1993).  "Such a risk might occur when evidence that
the jury should not consider against a defendant and that would
not be admissible if a defendant were tried alone is admitted

against a codefendant." Id.  "Improper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his . . . right to a fair trial."  Lane, 474 U.S. at 446 n.8.

Petitioner's trial counsel immediately objected to the remarks and requested severance.  "The trial judge then determined that it was not necessary to sever the trials because of Hayes' counsel's remarks.  Instead, he gave the jury an immediate curative instruction that Hayes' alleged drug activity was irrelevant to the case and they should disregard it."  State v. Murphy, No. A-4420-10, 2012 WL 1697392, at *5 (N.J. Super. Ct. App. Div. May 16, 2012).  The Appellate Division further concluded that Petitioner and Hayes "presented essentially the same defense — that Kemp was not a credible witness.  . . . Hayes offered trial testimony that, if believed by the jury, would have exculpated defendant.  There was no unfair prejudice to defendant in being tried jointly with Hayes."  Id.  This determination was a reasonable application of federal law. Hayes' defense was not antagonistic to Petitioner's defense, and the trial court promptly issued a curative instruction regarding the remarks.  ECF No. 28-11 at 38.

Petitioner has not shown that the Appellate Division's decision was contrary to or an unreasonable application of

federal law.  Nor has he shown that the decision was based on an
unreasonable determination of the facts in light of the evidence
presented during trial.  As such, Petitioner is not entitled to
habeas relief on this ground.

B.    Admission of Prior Association Evidence

      In Ground Two, Petitioner argues the trial court improperly
admitted evidence of a prior association between himself and Amy
Curran.  "Despite sanitization and a limiting instruction
because the testimony was presented by a police detective which
suggested prior criminal involvement perhaps even a belief that
the defendant and Amy (unindicted non-testifying witness) were
involved in similar criminal activity in 2004 as was alleged in
the indictment . . . the potential for undue prejudice clearly
outweighed any probative value."  ECF No. 7 at 21-22.  He also
argues in Ground Nineteen that this testimony violated his
Confrontation Clause right under the Sixth Amendment.  "In order
to establish a link between Amy Scott and defendant the State
sought to introduce the conjecture and hearsay testimony would
be allowed.  Despite the fact that this highly prejudicial
irrelevant and inadmissible hearsay testimony violated
petitioner's right to confront Amy the judge allowed it."  Id.
at 45.

      Petitioner's evidentiary claim lacks merit to the extent it
relies on New Jersey evidence rules.  "[I]t is not the province

of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Even if the admission of the testimony violated New Jersey's evidence rules, "'federal habeas corpus relief does not lie for errors of state law.'"  Id. at 67 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1984)).  "Admission of 'other crimes' evidence provides a ground for federal habeas relief only if 'the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial.'"  Bronshtein v. Horn, 404 F.3d 700, 730 (3d Cir. 2005) (quoting Lesko v. Owens, 881 F.2d 44, 52 (3d Cir. 1989)).

The Appellate Division concluded in Petitioner's direct appeal that Detective Bergman's testimony was not overly prejudicial.  "The trial judge made a preliminary ruling that the officer's testimony was relevant to show a relationship between Amy and defendant, but that the testimony would be sanitized to avoid telling the jury why the officer came in contact with the two of them in 2004."  Murphy, 2012 WL 1697392, at *5.  Before allowing the officer to testify, the trial court issued a limiting instruction:

> Ladies and gentlemen, you're about to hear testimony
> from Detective Ted Bergman of the Ventnor Police
> Department.  It will be up to you to decide what the
> facts are based on his testimony.  It is anticipated
> that he will testify that he knows Tysheim Murphy and
> someone identified as Amy [Curran] from his involvement
> with them in March 2004. You should know that citizens
> have encounters with law enforcement everyday for a
> variety of reasons, including the investigations of
> others, community protection and everyday pleasantries.
> You may not conclude just because Tysheim Murphy is
> allegedly known to Detective Bergman that Mr. Murphy is
> guilty of the charges in this indictment, or that he's
> a bad person.

ECF No. 28-13 at 70.  Officer Bergman then testified "that in March 2004 he went to an apartment in Ventnor and encountered the occupants, who identified themselves as Tysheim Murphy and Amy [Curran].  He testified that they both told him that they lived in the apartment.  Bergman was shown a picture of Amy and confirmed that she was the woman he spoke to at the apartment." Murphy, 2012 WL 1697392, at *6.

Here, Detective Bergman only testified that he recognized Petitioner and Amy from a prior encounter; he did not testify why he had occasion to speak with them at that time.  Even though Detective Bergman did not say anything during his brief, sanitized testimony that implied any wrongdoing by Petitioner or Amy "[o]ther crimes evidence is routinely admitted when it is relevant to show 'identity.'"  Bronshtein, 404 F.3d at 731 (citing Fed. R. Evid. 404(b)).  See United States v. Wilson, 31 F.3d 510, 515 (7th Cir. 1994) (permitting evidence of prior drug

transactions in order to establish a "buyer-seller relationship" between informant and defendant, identification of defendant, and to show how informant met defendant).  See also United States v. O'Leary, 739 F.2d 135, 136 (3d Cir. 1984) (agreeing the need "to show the background of the charges [and] the parties' familiarity with one another" were purposes under Rule 404(b) (quotation marks omitted)).  "The testimony was relevant to a material issue in the case; it was more probative than prejudicial; it was properly sanitized to remove any reference to a prior crime; and it was accompanied by an appropriate limiting instruction."  Murphy, 2012 WL 1697392, at *6.  This is a reasonable decision based on all the evidence at trial, and it was not contrary to or an unreasonable application of federal law.

Petitioner has procedurally defaulted on his Confrontation Clause claim.  Petitioner raised this claim for the first time in his second PCR petition.  ECF No. 28-37 at 11.  The PCR court concluded the second PCR petition was procedurally barred.  ECF No. 28-38.  "[O]nly rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not previously present to the state courts in compliance with state procedural rules."  Shinn v. Ramirez, 142 S. Ct. 1718, 1730 (2022).  "'Out of respect for finality, comity, and the orderly administration of justice,' federal courts may excuse procedural default only

if a prisoner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.'" Id. at 1733 (quoting Dretke v. Haley, 541 U.S. 386, 388 (2004); Coleman v. Thompson, 501 U.S. 722, 750 (1991)).

"To establish cause, the prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"  Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Murray, 477 U.S. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis and omission in original).  The Court is limited to the state court record in making its determination.  Shinn, 142 S. Ct. at 1730.

Petitioner asserts that "Counsel did not raise the issue." ECF No. 7 at 45.  "With respect to cause, '[a]ttorney ignorance or inadvertence' cannot excuse procedural default."  Shinn, 142 S. Ct. at 1733 (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)) (alteration in original).  "That said, 'if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State.'"  Id. (quoting Murray

v. Carrier, 477 U.S. 478, 488 (1986)).  "[I]neffective assistance of state postconviction counsel may constitute 'cause' to forgive procedural default of a trial-ineffective-assistance claim, but only if the State requires prisoners to raise such claims for the first time during state collateral proceedings."  Id.  The PCR court concluded that Petitioner had not established good cause for failing to raise this claim earlier:  "[Y]our petition claims your Sixth Amendment and Fourteenth Amendment rights were violated as well as your right to confrontation, cross-examination, and a complete defense. These claims, on their face, do not raise any issue that could not have been discovered earlier through the exercise of reasonable diligence."  ECF No. 28-38 at 1-2.  "Moreover, this subsequent petition does not allege ineffective assistance of counsel for prior post-conviction relief counsel.  Therefore, your second petition for post-conviction relief is denied."  Id. at 2 (citing N.J. Ct. R. 3:22-4(b)).  Nothing in the record before the Court suggests this conclusion is unreasonable. Petitioner has procedurally defaulted on this claim, and the Court will dismiss it accordingly.

    C.   Prosecutorial Misconduct

    In Ground Three,[6] Petitioner argues his due process rights

---

[6] Ground One in Petitioner's brief.  ECF No. 20 at 28.  The Court limits is analysis to the remarks that were addressed in

were violated by the prosecutor's closing argument.
"Prosecutor's summation exceeded the bounds of fair comment on
the evidence is insufficient in and of itself to warrant
reversal.  It must also be established that the comment were so
prejudiced that they deprived the defendant of his
constitutional right to a fair trial." ECF No. 7 at 22.  Trial
counsel did not object to the closing statement at trial.

"In evaluating such claims, we consider whether the
prosecutors' comments so infected the trial with unfairness as
to make the resulting conviction a denial of due process." Fahy
v. Horn, 516 F.3d 169, 198 (3d Cir. 2008) (citing Darden v.
Wainwright, 477 U.S. 168, 181 (1986)) (internal quotation marks
omitted).  To offend due process, "the prosecutorial misconduct
must be 'of sufficient significance to result in the denial of
the defendant's right to a fair trial.'" Greer v. Miller, 483
U.S. 756, 765 (1987) (quoting United States v. Bagley, 473 U.S.
667, 676 (1985)).  "This determination will, at times, require
us to draw a fine line-distinguishing between ordinary trial
error on one hand, and that sort of egregious misconduct which
amounts to a denial of constitutional due process on the other
hand." Werts v. Vaughn, 228 F.3d 178, 198 (3d Cir. 2000)

---

Petitioner's direct appeal, ECF No. 28-19.  Petitioner's
additional arguments in his brief about Amy Curran's status as a
sex worker and her absence from trial were not exhausted before
the state courts.  28 U.S.C. § 2254(b).

(internal quotation marks omitted).

On direct appeal, appellate counsel asserted that the prosecutor "argued the defense wanted to 'distract' the jury" and used "overzealous language denigrating the defense and trial counsel." ECF No. 28-19 at 41. The prosecutor made the following statement near the beginning of his closing argument

> During my closing argument I'm going to ask you to concentrate on the evidence that is going help you decide this case because the goal is to resolve this case, and decide this case, however you determine that it should be. So let's look at the evidence that is going to help you decide this case because as I suggest, as I did a moment ago, that a lot of the evidence that the defendant — that the defense wants you to look at doesn't help you resolve this case. It is a distraction. Hopefully you'll get caught up on the stuff that distracts you, and you don't resolve the case, and you say We don't know what is going on here.

ECF No. 28-14 at 46. The Appellate Division concluded that the argument was "without merit. The prosecutor's statements were an entirely proper response to the summation of defense counsel. No further discussion of this point is warranted." Murphy, 2012 WL 1697392, at *6 (citing N.J. Ct. R. 2:11-3(e)(2)). This is a reasonable decision and does not contradict federal law.

Trial counsel vigorously challenged Kemp's credibility during closing argument and specifically brought up Kemp's admission during cross that he had a machete in his van at the time of the alleged carjacking:[7]

---

[7] See ECF No. 28-12 at 29.

> Mr. Kemp testified on the stand that he had this machete.
> And I think we all know what a machete is.  It is not a
> knife, it's a knife over a foot long, and he had a great
> story about that too.  Every little issue he had a good
> story for.  And his story for this machete was is that
> he uses it to clean up weeds or to do yard work to cut
> trees down, and I found that to be strange.  Here is
> someone here when testified he was I think he said 360
> pounds and he had lost 90 pounds.  So within not a long
> time he was 450 pounds, he's outside doing yard work?
> It's not impossible, but again unlikely.  And think about
> what time of year.  This is February 2007, Mr. Kemp in
> Atlantic City by himself, in the van, he has machete.
> What is that all about?  His story again he tries to
> explain it, and it doesn't seem to make a lot of sense.

ECF No. 28-14 at 10-11.  The prosecutor was responding to this

argument when he made the comment to which Petitioner objects:

> It is a distraction.  Hopefully you'll get caught up on
> the stuff that distracts you, and you don't resolve the
> case, and you say We don't know what is going on here.

> Like what?  What am I talking about? Let's talk about
> machete.  Mr. Kemp is no angel.  He said [he] was no
> angel, but what does that have to do with this case?
> Did he – even in his ridiculous story that we are going
> to get to, the machete was never flashed at anybody.
> The machete was never shown to anybody.  Machete has
> nothing to do with, but get stuck on machete, he spent
> a lot of time on the machete in the closing argument;
> how does it help you resolve this case?

Id. at 46-47.  This argument "did not manipulate or misstate the

evidence, nor did it implicate other specific rights of the

accused such as the right to counsel or the right to remain

silent."  Darden v. Wainwright, 477 U.S. 168, 181-82 (1986).

When viewed in the context of the entire proceedings and in

consideration of all the evidence at trial, any objectionable

statements by the prosecutor did not so infect the trial such

that habeas relief would be warranted.  The Appellate Division reasonably applied federal law and was objectively reasonable in concluding the remarks did not violate due process.  Habeas relief will be denied.

D.    Denial of Grand Jury Right

Petitioner next asserts that his right to an indictment by a grand jury and due process right were violated when the trial court concluded "exculpatory evidence did not exist or was not known to the prosecutor when the case was presented to the grand jury."  ECF No. 7 at 22.  He asserts that "[i]nformation on Caesar Parks, Amy Curran, the prosecutor inadequate [sic] investigation and manner of presentation resulted in 'half-truth' being submitted to the grand jury as well as the State witness (Sergeant Lushina) lied about his investigation."  Id.

Petitioner argues here, as he did on direct appeal, that "the motion court erred in not dismissing the indictment because the prosecutor's inadequate investigation and manner of presentation resulted in the submission of 'half truths' and undermined the defendant's state constitutional right to indictment by grand jury."  ECF No. 7 at 22 (emphasis added). The Court cannot grant habeas relief for violations of state law, and any federal claim is unexhausted.

"To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts

22

in a manner that puts them on notice that a federal claim is being asserted.  It is not sufficient that a 'somewhat similar state-law claim was made.'"  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982)) (internal citations omitted).  Petitioner only cited state law to the Appellate Division and did not indicate in any form that he was asserting a federal claim as well.  See ECF No. 28-19 at 45-48.  See also Keller v. Larkins, 251 F.3d 408, 414 (3d Cir. 2001) (holding petitioner "did not give the state courts 'fair notice' that he was asserting a federal constitutional claim rather than a claim that the trial court violated state rules of evidence.").  Petitioner's federal claim is unexhausted, but the Court will review the merits de novo as "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

"The United States constitutional requirement of indictment by a grand jury has not been made applicable to the states, and accordingly, we confine ourselves to a determination of whether due process requirements have been satisfied."  U. S. ex rel. Wojtycha v. Hopkins, 517 F.2d 420, 425 (3d Cir. 1975) (citing Alexander v. Louisiana, 405 U.S. 625 (1972); Hurtado v. California, 110 U.S. 516 (1884)).  See also Burns v. Warren, No.

13-1929, 2016 WL 1117946, at *29 (D.N.J. Mar. 22, 2016) (citing Wojtycha).  "Because there is no federal right to a state criminal grand jury process, defects in a grand jury proceeding that result in an indictment are not generally challengeable in habeas cases absent some other basis for finding a constitutional violation." Rollins v. Slaughter, No. 19-13390, 2022 WL 2358387, at *26 (D.N.J. June 30, 2022) (citing Wainwright v. Goode, 464 U.S. 78, 86 (1983)).  "Further, under most circumstances, 'a subsequent guilty verdict from a petit jury' will render harmless any alleged defect before the grand jury." Id. (quoting Yough v. Lord, No. 19-601, 2020 WL 6689854, at *9 (D.N.J. Nov. 13, 2020)).  See also United States v. Mechanik, 475 U.S. 66, 72-73 (1986).

Petitioner "contends that the State should have conducted a more complete investigation which would have uncovered exculpatory information to present to the grand jury.  He also complains that hearsay evidence was presented to the grand jury in lieu of testimony from Kemp." Murphy, 2012 WL 1697392, at *4.  "Even assuming this occurred, however, the petit jury's guilty verdict rendered any prosecutorial misconduct before the indicting grand jury harmless." United States v. Console, 13 F.3d 641, 672 (3d Cir. 1993).  "[E]ven if deficiencies affected the grand jury's decision to indict, 'the petit jury's subsequent guilty verdict means not only that there was probable

cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt.'" Rollins, 2022 WL 2358387, at *26 (quoting Mechanik, 475 U.S. at 70). Accordingly, Petitioner has not shown a violation of federal law such that habeas relief is warranted. The Court will deny this claim.

E.   Motion for a New Trial

Petitioner argues in Ground Five that "[t]he trial court applied an erroneous standard in denying the defendants motion for a new trial." ECF No. 7 at 23. He argues in support that his "right to due process of law under the fourteenth amendment was violated since the trial errors set forth in [Grounds One through Four] had the capacity to directly impact on the jury's fact finding functions the defendant submits that he was entitled to a new trial." Id.   The Court construes this as a cumulative error claim.

"Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). The Court has reviewed the Appellate Division's resolution of Grounds One through Three with the appropriate

AEDPA deference and concluded its resolution was not contrary to
or an unreasonable application of federal law as determined by
the Supreme Court.  The decision was also reasonable based on
the facts at trial.  The Court found no federal error in its de
novo review of Ground Four.  Thus, "Petitioner has (i) failed to
cast doubt over the proofs of his guilt, and (ii) failed to
establish that he has suffered any prejudice from the purported
errors.  Thus, Petitioner has not proven that the alleged
cumulative errors had 'a substantial and injurious effect or
influence in determining the jury's verdict.'" Thomas v.
Johnson, No. 18-0710, 2022 WL 603002, at *28 (D.N.J. Mar. 1,
2022) (quoting Fahy v. Horn, 516 F.3d 169, 205 (3d Cir. 2008)),
certificate of appealability denied sub nom. Thomas v. Adm'r New
Jersey State Prison, No. 22-1540, 2022 WL 4363552 (3d Cir. Aug.
30, 2022).  The Court will deny habeas relief on this ground.

G.   Perjured Testimony

    Petitioner further argues that the State used perjured
testimony during trial in violation of the Sixth and Fourteenth
Amendments.  "A state violates the Fourteenth Amendment's due
process guarantee when it knowingly presents or fails to correct
false testimony in a criminal proceeding." Haskell v.
Superintendent Greene SCI, 866 F.3d 139, 145-46 (3d Cir. 2017)
(citing Napue v. Illinois, 360 U.S. 264, 269 (1959); Giglio v.
United States, 405 U.S. 150, 153 (1972); Lambert v. Blackwell,

387 F.3d 210, 242 (3d Cir. 2004)).  "A conviction must be set aside even if the false testimony goes only to a witness's credibility rather than the defendant's guilt."  Id. at 146.  To succeed on this claim, Petitioner "must show that (1) [the witness] committed perjury; (2) the government knew or should have known of [the] perjury; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict."  Lambert, 387 F.3d at 242.

Petitioner argues "the States witnesses claim that [Petitioner] had [Kemp's] cell phone is false testimony concocted for the sole purposes of obtaining a conviction."  ECF No. 7 at 48.  "Both the victim and the arresting officer testified at trial that one of the two cell phones that was found on petitioner belong to and was returned to the victim."  Id. at 48-49.  "The petitioner has proof that both cell phones he had were his and neither was taken from him.  The jail records reflect that petitioner was arrested with two cell phones which both were placed in his property on February 4, 2007 and they were released on April 5, 2007."  Id. at 49.

This claim is procedurally defaulted.  It was raised for the first time in Petitioner's second PCR petition, which the PCR court concluded was barred by state law.  ECF No. 28-38.  Petitioner has not shown cause for the default, so the Court may

not review this claim.  Shinn v. Ramirez, 142 S. Ct. 1718, 1730 (2022).

H.   Excessive Sentence

Petitioner argues his "fourteenth amendment right to due process of law to the United States Constitution was violated [when] the defendants two predicate conviction were C.D.S. possessory drug offenses 3rd degree not violent crimes although the original charges contained numerous first degree counts including carjacking and kidnapping the defendant was found not guilty of those charges."  ECF No. 7 at 24.  "[A] federal court's ability to review state sentences is limited to challenges based on 'proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies.'"  Rollins v. Slaughter, No. 19-13390, 2022 WL 2358387, at *17 (D.N.J. June 30, 2022) (quoting Grecco v. O'Lone, 661 F. Supp. 408, 415 (D.N.J. 1987)).  "Thus, federal courts may not review a challenge to a state court's discretion at sentencing unless it violates a separate federal constitutional limitation."  Id. (citing Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984)).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  Ewing v. California, 538 U.S. 11, 20 (2003) (citations omitted).  "A court must consider

three proportionality factors when evaluating Eighth Amendment
challenges: (1) the gravity of the offense and the harshness of
the penalty; (2) the sentences imposed on other criminals in the
same jurisdiction; and (3) the sentences imposed for commission
of the same crime in other jurisdictions." United States v.
Burnett, 773 F.3d 122, 136 (3d Cir. 2014) (citing Solem v. Helm,
463 U.S. 277, 290-92 (1983)).  "In conducting this analysis, a
court grants substantial deference to legislative decisions
regarding punishments for crimes." Id.  "The first factor acts
as a gateway to the proportionality inquiry.  The Eighth
Amendment only forbids sentences that are 'grossly
disproportionate' for a conviction for the crime involved."
Rollins, 2022 WL 2358387, at *17.

Armed robbery is a crime of the first degree in New Jersey.
N.J.S.A. § 2C:15-1(b).  The Appellate Division agreed with the
sentencing court that Petitioner was eligible for an extended
term as a persistent offender.  Murphy, 2012 WL 1697392, at *8
(citing N.J.S.A. § 2C:44-3).  "The extended-term sentencing
range for first-degree crimes in New Jersey other than murder
and certain other offenses is between 20 years and life
imprisonment." ECF No. 28 at 16 (citing N.J.S.A. § 2C:43-
7(a)(2)).  Petitioner's sentence is within that range.

"Generally, a sentence within the limits imposed by statute
is neither excessive nor cruel and unusual under the Eighth

29

Amendment." United States v. Miknevich, 638 F.3d 178, 186 (3d
Cir. 2011). "If the petitioner fails to demonstrate a gross
imbalance between the crime and the sentence, a court's analysis
of an Eighth Amendment challenge ends." Rollins, 2022 WL
2358387, at *17. "Thus, although the Appellate Division
addressed Petitioner's sentencing claims under the lens of state
law, its reasoning was neither contrary to, nor an unreasonable
application of, clearly established federal law." Id. at *18.
The Court will deny habeas relief on this claim.

I.    Ineffective Assistance of Counsel

        Petitioner's remaining claims assert that he received
ineffective assistance of counsel.  To succeed on these claims,
Petitioner must "show that counsel's representation fell below
an objective standard of reasonableness." Strickland v.
Washington, 466 U.S. 668, 688 (1984).  He must then show "a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.
A reasonable probability is a probability sufficient to
undermine confidence in the outcome." Id. at 694.  Furthermore,
"[w]hen a federal habeas petition under § 2254 is based upon an
ineffective assistance of counsel claim, '[t]he pivotal question
is whether the state court's application of the Strickland
standard was unreasonable,' which 'is different from asking
whether defense counsel's performance fell below Strickland's

standard.'"  Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013)

(quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)).

"Federal habeas review of ineffective assistance of counsel

claims is thus 'doubly deferential.'"  Id. (quoting Cullen v.

Pinholster, 563 U.S. 170, 190 (2011)).

　　　　1. Motion to Dismiss Certain Persons Charge

　　　　Petitioner alleges that trial counsel was ineffective for

failing to file a motion to dismiss Count Thirteen of the

indictment, which charged Petitioner with possession of a weapon

by a convicted person, N.J.S.A. § 2C:39-7.  ECF No. 7 at 43.

"To support a finding of possession of a weapon by a convicted

person in the second degree the State was required to show that

defendant had previously been convicted of a crime."  Id.  "The

State did not present any evidence to the Grand Jury that they

could infer that the defendant had been convicted of a crime."

Id. at 44.

　　　　This claim is procedurally defaulted.  It was raised for

the first time in Petitioner's second PCR petition, which the

PCR court concluded was barred by state law.  ECF No. 28-38.

Petitioner has not shown cause for the default, so the Court may

not review this claim.

　　　　2.  Selective Prosecution

　　　　Petitioner also claims trial counsel was ineffective for

failing to raise a selective prosecution defense.  ECF No. 7 at

46.  "Petitioner has held steadfast since the initiation of
these proceedings that he was targeted by the prosecutor's
office in this matter and the office's decision not to charge
Amy Scott was a case of selective prosecution."  <u>Id.</u>
"Petitioner notes that Amy Scott is White while all the
defendants in this matter are black. The selection of a
defendant must be deliberately based upon an unjustified
standard such as race, religion, or other arbitrary
classification in order to constitute a violation [of]
constitutional protections."  <u>Id.</u>

    This claim is procedurally defaulted.  It was raised for
the first time in Petitioner's second PCR petition, which the
PCR court concluded was barred by state law.  ECF No. 28-38.
Petitioner has not shown cause for the default, so the Court may
not review this claim.

    3.    <u>Failure to Move for a Mistrial</u>

    In Ground Twenty-One, Petitioner alleges trial counsel was
ineffective for failing to move for a mistrial "when the
prosecutor elicited testimony informing the jury that the
defendant was incarcerated."  ECF No. 7 at 47.  This claim is
procedurally defaulted.  It was raised for the first time in
Petitioner's second PCR petition, which the PCR court concluded
was barred by state law.  ECF No. 28-38.  Petitioner has not

shown cause for the default, so the Court may not review this claim.

### 4.   Failure to Cross-Examine Witnesses

Petitioner alleges trial counsel was ineffective during trial for failing to adequately cross examine the State's witnesses.  This claim was raised in Petitioner's first PCR petition, and the PCR court rejected it on the merits without an evidentiary hearing.  ECF No. 28-29.  The PCR court correctly identified Strickland as the governing standard for ineffective assistance of counsel claims, id. at 9-10, so the Court applies the "doubly deferential" AEDPA standard of review.  Dunn v. Reeves, 141 S. Ct. 2405, 2410 (2021).

Petitioner argues trial counsel rendered ineffective assistance by failing to adequately cross-examine Officer Nhan about "the search of Mr. Murphy upon arrest and specifically that two cell phones that were recovered from his person."  ECF No. 7 at 26.  Petitioner submitted "an inmate property log of the items that he possessed when he was lodged in jail following his arrest in this matter" to the PCR court.  ECF No. 28 at 21; see also ECF No. 28-26 at 103.  "Listed among the items in the 'Administrative Safekeeping' column is a 'cell phone.'  In the column for quantity is written what perhaps is the number '2' with a slash through it."  ECF No. 28 at 21.  Petitioner argued to the PCR court that

trial counsel failed to cross examine the arresting
officer, Officer Nhan, with regards to the items that
the Petitioner had on his person when he was booked at
the station, thereby supposing to the jury that the
Petitioner was in possession of the victim's phone.
Failure to confront such a witness when there was
contrary evidence in trial counsel's possession, argues
PCR Counsel, is ineffective assistance of counsel.
During Officer Nhan's testimony, he testified that he
recovered two cell phones from the Petitioner, one
belonging to the victim, to which he rightfully returned
it.  The victim's testimony likewise stated this fact.
PCR Counsel concludes that from this information, when
the Petitioner was brought in, he would have been in
control of only one cell phone and one set of keys.
However, according to the records when his property was
received, Counsel points out that it states that the
Petitioner possessed two cell phones and there was no
mention of any keys.  PCR Counsel states that this
information should have been pointed out during trial
because if it had, then compared with the testimony by
the two individuals, it would cast doubt on the State's
presentation of their case.

ECF No. 28-29 at 5.

The PCR court concluded Petitioner had not shown a prima

facie case of ineffective assistance of counsel, finding that

"the cross-examination by trial counsel was competent.  And even

if it were not up to snuff the quality of cross-examination did

not affect the ultimate outcome in this case."  Id. at 12.[8]  "The

_____

[8] The PCR court's statement that "the quality of cross-
examination did not affect the ultimate outcome in this case"
does not make its decision contrary to Strickland's "reasonable
probability" standard.  The PCR court correctly recited the
Strickland standard in its statement of the law.  ECF No. 28-29
at 9-10.  Federal habeas courts should not "needlessly create
internal inconsistency" in state court opinions.  Holland v.
Jackson, 542 U.S. 649, 654-55 (2004) (holding court of appeals
erred by finding state court decision was contrary to Strickland
when state court previously cited standard correctly and the

proofs were strong and the jury made its determination.  The evidence that the cell phone was recovered and identified by the victim at the scene established that the Petitioner had robbed the victim.  Whether or not it was returned to the victim thereafter is irrelevant as it pertains to the elements of the offense."  Id.

The PCR court reasonably applied Strickland when it concluded that Petitioner had not satisfied the prejudice prong. Kemp and Officer Nhan both testified that Kemp recognized his cell phone after Petitioner's pockets were emptied and was able to provide facts to Officer Nhan that verified Kemp's ownership of the phone, including Kemp's name and phone number.  See ECF No. 28-12 at 6.  The property log at best suggests Petitioner had two phones in his possession at the time of his arrest; it does not provide any proof that both phones belonged to Petitioner.  "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and that the burden to 'show that counsel's performance was deficient'

---

opinion as a whole indicated correct standard was used). "Most relevant court of appeals decisions agree that where a reading of the state court's opinion as a whole demonstrates that the state court applied the correct legal standard (notwithstanding stray imprecise articulations), the federal habeas court is to defer to the state court's decision."  Sawyer v. Superintendent Muncy Sci, 619 F. App'x 163, 170 (3d Cir. 2015)), cert. denied sub nom. Sawyer v. Smith, 136 S. Ct. 1173 (2016).

rests squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013) (quoting Strickland, 466 U.S. at 690, 687).  "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" Id. at 23 (quoting Strickland, 466 U.S. at 689) (alteration in original).  Petitioner has not shown that the PCR court's application of Strickland was objectively unreasonable; therefore, he is not entitled to habeas relief based on trial counsel's allegedly ineffective cross-examination of Officer Nhan.

Petitioner also alleges that trial counsel was ineffective for failing to cross examine Kemp about the layout of the rooming house.  "Mr. Kemp provided a full description of the rooming house where the incident occurred. In response to the prosecutor's question, Mr. Kemp indicated that the structure had 'elevators inside, yes' and that he took an elevator up upon entering, about [sic] took the stairs while exiting."  ECF No. 28-26 at 18.  "However counsel had information in hand that would demonstrate that the information was false. . . .  The investigation revealed that there were no elevators in the building at all."  Id. (emphasis in original).  Petitioner also asserts that trial counsel should have confronted Kemp with his criminal history.  Id. at 19.

The PCR court rejected both of these arguments:

With regards to the layout of the rooming house, the victim's mistaken account of whether there was an elevator in the building does not impeach his credibility as to his recollection of the events that occurred on the night in question. Furthermore, the victim's testimony, as the State points out, was consistent throughout the entire cross-examination, thereby establishing a lack of fabrication on his part.

Lastly, under N.J.R.E. 609, only evidence of a crime is admissible for impeachment purposes. Convictions of disorderly person's offenses or traffic violations are not admissible. As pointed out by the State, the crime that the victim was convicted of, failure to voluntarily turn over a controlled dangerous substance to a law enforcement officer is a disorderly persons offense under N.J.S.A. 2C:35-10(c), and as such, would not be able to be used for credibility or impeachment purposes. As a result, the Court finds that trial counsel was correct in not cross examining the victim about his prior disorderly conviction and therefore, this is not an adequate ground for ineffective assistance of counsel warranting Post-Conviction Relief.

ECF No. 28-29 at 12.  The PCR court reasonably concluded that there was not a reasonable probability that cross-examination would have changed the trial's outcome in light of the totality of the evidence presented at trial. "[] Petitioner does not explain how the inconsistencies would have changed the outcome other than to generally challenge [Kemp's] reliability as a witness." Godinez v. Johnson, No. 18-15402, 2022 WL 2304674, at *24 (D.N.J. June 27, 2022).  As for failing to cross-examine Kemp about his criminal history, "[t]here can be no prejudice if counsel's deficient performance merely deprived [Petitioner} of the opportunity to do something that would have been legally

37

prohibited." <u>Davis v. Adm'r New Jersey State Prison</u>, 795 F.
App'x 100, 103 (3d Cir. 2019).  Accordingly, Petitioner is not
entitled to habeas relief on this claim.

    5.  <u>Amy Curran</u>

Petitioner's final ineffective assistance of trial counsel
claims concern Amy Curran.  Petitioner alleges that trial
counsel was ineffective for "[misleading] the defendant with
regards to the use of Amy Curran as a defense witness thereby
depriving him of the right to making an informed decision about
avoiding an extended term and accepting a comparatively lenient
plea agreement."  ECF No. 7 at 28-29.  He also alleges trial
counsel was ineffective for failing to call her as a witness at
trial.  <u>Id.</u> at 25-26.

"Defendants have a Sixth Amendment right to counsel, a
right that extends to the plea-bargaining process.  During plea
negotiations defendants are 'entitled to the effective
assistance of competent counsel.'"  <u>Lafler v. Cooper</u>, 566 U.S.
156, 162 (2012) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771
(1970)).  "In the context of guilty pleas, the first half of the
<u>Strickland v. Washington</u> test is nothing more than a restatement
of the standard of attorney competence . . . ."  <u>Hill v.
Lockhart</u>, 474 U.S. 52, 58 (1985).  "The second, or 'prejudice,'
requirement, on the other hand, focuses on whether counsel's
constitutionally ineffective performance affected the outcome of

the plea process." Id. at 59. "In other words, in order to
satisfy the 'prejudice' requirement, the defendant must show
that there is a reasonable probability that, but for counsel's
errors, he would not have pleaded guilty and would have insisted
on going to trial." Id.

The Supreme Court subsequently further refined this
standard in Lafler v. Cooper, 566 U.S. 156 (2012), in which
defendant stated he rejected a plea offer based on the deficient
advice of counsel. "[A]fter the plea offer had been rejected,
there was a full and fair trial before a jury. After a guilty
verdict, the defendant received a sentence harsher than that
offered in the rejected plea bargain." Id. at 160. "In
contrast to Hill, here the ineffective advice led not to an
offer's acceptance but to its rejection. Having to stand trial,
not choosing to waive it, is the prejudice alleged." Id. at
164. The Court continued:

> In these circumstances a defendant must show that but
> for the ineffective advice of counsel there is a
> reasonable probability that the plea offer would have
> been presented to the court (i.e., that the defendant
> would have accepted the plea and the prosecution would
> not have withdrawn it in light of intervening
> circumstances), that the court would have accepted its
> terms, and that the conviction or sentence, or both,
> under the offer's terms would have been less severe than
> under the judgment and sentence that in fact were
> imposed.

Id.

The Court previously denied Petitioner's motion for an evidentiary hearing on his claim that trial counsel's ineffectiveness caused him to reject a favorable plea bargain. Murphy v. Att'y Gen. of New Jersey, No. 17-2960, 2021 WL 3144641, at *2 (D.N.J. July 26, 2021); ECF No. 38.  In considering Petitioner's request for an evidentiary hearing, the Court first considered "whether the Appellate Division, as the last state court to reach the issue on its merits, issued a decision that was contrary to federal law, an unreasonable application of federal law, or was based on an unreasonable determination of the facts.  If no, the inquiry ends there because Petitioner has not satisfied the § 2254(d) standard." Murphy, 2021 WL 3144641, at *4.

The Court denied Petitioner's request for a hearing because it concluded the Appellate Division's decision was "not contrary to established Supreme Court precedent, nor an unreasonable application of that precedent.  It is further reasonable in light of the facts contained in the state court record. Therefore, Petitioner has not met his burden of proof under § 2254(d)(1)." Id. at *8.  The Court adopts and incorporates its reasoning on this issue in full, adding the following brief points.

Petitioner asserts that "[t]he critical fact that is being overlooked is that, at the time the Petitioner rejected his plea

offer, it was his understanding that Ms. Curran would be called to testify on his behalf." ECF No. 39 at 8. "[T]he assurances that she would be called as a defense witness for Petitioner played a significant role in his decision to ultimately reject the final plea offer and proceed to trial." Id. This argument addresses Strickland's prejudice prong but says nothing about the performance prong.

The PCR court concluded that "[t]he decision by the Petitioner to not accept the plea deal was not influenced by trial counsel's alleged misrepresentations because at the time of the plea offer, it is entirely possible that counsel felt that they were going to have Ms. Curran testify. The decision made many months later to not call her did not affect the Petitioner's decision to reject the offer." ECF No. 28-29 at 14. Essentially, Petitioner asks the Court to conclude that trial counsel erred on January 5, 2010 (the plea cutoff date) because trial counsel did not call Amy Curran as a witness on September 14, 2010. There is no evidentiary support behind this fallacy; trial counsel's actions on September 14, 2010 do not mean that trial counsel made an error on January 5, 2010 that fell below an objective standard of reasonableness. "Strategies can and do often change due to a change in circumstances. Criminal trials are very fluid things. Even the most

41

experienced and effective trial counsel are compelled to make strategic calls on the fly." Id.

In § 2254 proceedings, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). See also Harrington v. Richter, 562 U.S. 86, 101 (2011) ("The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.").  "The term unreasonable refers not to ordinary error or even to circumstances where the petitioner offers a strong case for relief, but rather to extreme malfunctions in the state criminal justice system." Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (per curiam) (cleaned up). Accordingly, "[w]hen a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (quoting Harrington, 562 U.S. at 103).

Petitioner has not produced any evidence to support his claim that trial counsel misled him prior to rejecting the plea offer, and the state courts reasonably concluded that Petitioner had not satisfied the performance prong of Strickland. Accordingly, it was a reasonable application of Strickland for the state courts to deny Petitioner's ineffective assistance of counsel claim.

The state courts also applied Strickland reasonably when they rejected Petitioner's ineffective assistance of counsel claim based on trial counsel's failure to call Ms. Curran as a witness. "The defense's trial strategy was to not have a link between the Petitioner and the commission of the crime." ECF No. 28-29 at 11. Ms. Curran's testimony would have confirmed certain aspects of Kemp's testimony, including that Ms. Curran invited Kemp to her place despite being in a relationship with Petitioner and that there was a confrontation with Petitioner at the room. See ECF No. 20-2 at 52. "To produce a witness that is going to connect the client with the crime that he is accused of would not further defense counsel's goal." ECF No. 28-29 at 12. "Instead, counsel presented an alibi witness, and co-defendant Hayes gave testimony which, if believed, would have completely exculpated defendant without placing defendant at the crime scene." Murphy, 2016 WL 6872984, at *3. This is a

reasonable application of Strickland; Petitioner is not entitled
to relief under § 2254.

    6.   Ineffective Assistance of Appellate Counsel

Finally, Petitioner argues that he received ineffective
assistance of appellate counsel.  "Petitioner submits Appellate
counsel was ineffective in failing to raise the issues raised
above.  The issues have merit and Appellate counsel should have
recognize them.  There is a likelihood that petitioner would
have been successful thus the actions of Appellate counsel
denied petitioner effective assistance."  ECF No. 7 at 50.

Petitioner raised this claim in his second PCR petition.
ECF No. 28-37 at 12.  The PCR court concluded the second PCR
petition was procedurally barred.  ECF No. 28-38.  "Moreover,
this subsequent petition does not allege ineffective assistance
of counsel for prior post-conviction relief counsel.  Therefore,
your second petition for post-conviction relief is denied."  Id.
at 2 (citing N.J. Ct. R. 3:22-4(b)).  Petitioner has
procedurally defaulted on this claim and has not established
cause for the default.  This claim is dismissed as procedurally
defaulted.

IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not
appeal from a final order in a habeas proceeding where that
petitioner's detention arises out of his state court conviction

unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right.  As jurists of reason could not disagree with this Court's resolution of his claims either procedurally or on the merits, the Court shall deny Petitioner a certificate of appealability.

V.   CONCLUSION

For the reasons stated above, the habeas petition will be dismissed in part as procedurally defaulted and denied in part. A certificate of appealability shall not issue.

An accompanying Order will be entered.

 November 23, 2022                      s/ Noel L. Hillman
Date                                   NOEL L. HILLMAN
                                       U.S. District Judge